## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION


**KENNETH LAMBERTON,**

      **Petitioner,**

**vs.**

                          **CASE NO.: 4:09cv195-RH/WCS**

**KENNETH S. TUCKER, Secretary,**
**Florida Department of Corrections,[1]**

      **Respondent.**

_____/


## REPORT AND RECOMMENDATION

Before me is an amended petition for writ of habeas corpus filed by Kenneth

Lamberton, _pro se_, pursuant to 28 U.S.C. § 2254.  Doc. 8.  Petitioner challenges his

convictions after a jury trial for attempted lewd or lascivious molestation (count I) and

aggravated assault with a deadly weapon (count 2) in the Circuit Court of the Second

Judicial Circuit, in and for Leon County, Florida, case number 2005-CF-1273.  _Id_.

Respondent filed an answer and the record in paper form.  Doc. 19.  References herein

_____

[1] On August 24, 2011, Kenneth S. Tucker succeeded Edwin G. Buss as the
Secretary of the Florida Department of Corrections, and is automatically substituted as
Respondent.  Fed.R.Civ.P. 25(d).  At the time Petitioner filed this habeas petition, he
listed Walter McNeil as the Respondent.  However, Edwin Buss succeeded Walter
McNeil.

to exhibits are to the record in paper form.  Petitioner filed a reply and two supplements.

Doc. 26, 27, and 30.  Respondent concedes in calculation of the state court

proceedings that this petition was timely filed under the AEDPA.  Doc. 19, p. 6.

**Summary of the trial evidence**

S. H., who was 14 years old at the time of trial, testified that Petitioner was her

uncle.  Ex. H (initial brief on appeal), p. 3.  On April 7, 2005, at about 6 p.m., Petitioner

told S. H. that he knew where a birthday party was occurring which S. H. could attend.

*Id.*  She got into his truck, he drove into the Apalachicola National Forest, he smoked a

white powder in a soda can, he asked if she would like to drive by sitting on his lap, and

she sat on his lap and she drove, with Petitioner operating the clutch and stick shift.  *Id.*

Petitioner started touching S. H.'s leg, stomach, put his hand under her shirt, and came

near her "private area."  *Id.*, pp. 3-4.  Petitioner told S. H. that his wife "wouldn't give him

any; so, he had to get it somewhere else."  *Id.*, p. 4.  S. H. said that she became

uncomfortable, slammed on the brakes, and eventually returned to the passenger seat.

*Id.*  Petitioner took her to the movies and waited in the parking lot until she came out.

*Id.*  On the way, he went to a run down neighborhood and gave a man money in

exchange for something.  *Id.*  He then drove back to the National Forest, said he had to

go to the bathroom, stopped, got out of the truck and grabbed something from the bed

of the truck, opened the door, and pushed a box cutter against her throat.  *Id.*, p. 5.  S.

H. said she let out a "small scream," he said he was only joking, but she said he really

looked serious and angry.  *Id.*  She said, "If I hadn't had screamed, he would have

actually either raped or killed me."  *Id.*  Petitioner drove her home at about midnight, told

her "not to say anything or he could get in really big trouble," let her keep the change

from $20 for the movie, and gave her two tickets to Wild Adventures. *Id.*, p. 5. S. H. said that her friend, A. B., had been molested by Petitioner in Petitioner's truck. *Id.* On cross examination, Petitioner's counsel revealed inconsistencies between the testimony of S. H. her mother's recounting of what S. H. told her. *Id.*, p. 6.

A. B., who was also 14 years old at the time of trial, testified that on October 20, 2004, Petitioner approached her at a boat dock and told her that her boyfriend wanted to see her, offering to drive her to a store where he said her boyfriend was. *Id.*, p. 7. Petitioner drove A. B. to some woods, stopped the truck, told her to get out, grabbed her from behind, started feeling her stomach and her breast, and said, "I've been waiting for this moment long time . . . ." *Id.*, p. 8. A. B. said that she started crying "really bad" and told him to stop, and he stopped and took her back to the dock. *Id.* Petitioner told her not to tell anyone because he knew it was the wrong thing to do and he was sorry. *Id.* Eventually, she told her mother and the police about it. *Id.* This testimony was permitted as *Williams* rule[2] evidence over Petitioner's objection. *Id.*, p. 3.

A box cutter was found during a search of Petitioner's truck. *Id.*, p. 8. The state rested.

---

[2] <u>Williams v. State</u>, 110 So. 2d 654 (Fla.1959).

Under the *Williams* rule evidence of other crimes, wrongs and acts is admissible if it is relevant to and probative of a material issue even though the evidence may indicate the accused has committed other uncharged crimes or may otherwise reflect adversely upon the accused's character. Section 90.404(2)(a), Florida Statutes, (1983), codifies the ruling in *Williams v. State* and lists the purposes for which such evidence is deemed to be admissible: proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

<u>Buenoano v. State</u>, 527 So. 2d 194, 197 (Fla. 1988), *cert. denied*, 523 U.S. 1043 (1998).

Petitioner presented a witness, 14 years of age, testified that Petitioner was her step-father.  *Id.*, p. 9.  She said that S. H. and A. B. were her best friends.  *Id.*

Petitioner's sister-in-law testified that A. B. had asked to spend the night with her because her boyfriend lived across the street.  She said that A. B. became angry when she refused.  *Id.*

Ms. Lamberton, Petitioner's sister and S. H.'s mother, testified that she let S. H. go with Petitioner the night of April 7, 2005, even though she knew he had been accused of molesting A. B.  *Id.*  She had not believed A. B., and trusted Petitioner.  *Id.* She had expected S. H. to return home by 11 p.m., and was very worried when she did not return until 1:00 a.m.  *Id.*  She had testified in her deposition that S. H. had told her that Petitioner had touched her vagina and breasts, and had tried to pull her pants down when he assaulted her with the box cutter, and said she had been "confused."  *Id.*

Before resting, Petitioner's attorney announced that Petitioner knew he had the right to testify but elected not to testify.  Ex. E (trial transcript), p. 34.

In rebuttal, the State presented testimony of Detective Dennis, who said that Ms. Lamberton gave a statement on the day after the incident that was very similar to the statement given by S. H.  Ex. H, p. 10.  This interview was conducted by the child protection team on April 8, 2005, and he observed and heard the interview through a one-way mirror.   Ex. E, pp. 35-36.  He said that S. H. had not claimed that Petitioner had touched her vagina underneath her clothing during this interview.  *Id.*, p. 36.  She only said that Petitioner touched her pants on the inside of her leg close to her genital area and ran his hand under her shirt almost to her bra.  *Id.*  She did not say that Petitioner pulled her pants down, did not say that Petitioner was then lying on top of her

with the knife to her throat, and did not say that Petitioner put both hands on her breasts.  *Id.*, p. 37.

Ms. Lamberton was called in rebuttal and identified her former statement.  Ex. H, p. 10.  S. H. was called in rebuttal, reviewed her deposition, and said she never told the police that Petitioner had touched her vagina or breasts, and she did not know why her mother was confused.  *Id.*

Petitioner was found guilty of both charges.  He was sentenced to five years in prison on each, to be served consecutively, for a total of ten years.

**Section 2254 Standard of Review**

The court may grant federal habeas corpus relief to "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A state prisoner must first present all federal claims in state court.  § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 839, 119 S.Ct. 1728, 1730, 144 L.Ed.2d 1 (1999). He "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." 526 U.S. at 845, 119 S.Ct. at 1732; Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (applying this "one complete round" requirement to the state collateral review process as well as direct appeal).  If a claim is not properly presented in state court and procedurally barred from further state court review, a petitioner must demonstrate cause for the default and actual prejudice, *or* demonstrate that the constitutional violation has probably resulted in conviction of an innocent person.  Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2565, 115 L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467,

494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991). On the other hand, a § 2254

petition "may be denied on the merits, notwithstanding the failure of the applicant to

exhaust the remedies available in the courts of the State." § 2254(b)(2).

For a claim which has been properly exhausted and adjudicated on the merits in

state court, review is limited. The state court's determination of a factual issue is

presumed correct, unless the petitioner can rebut the presumption by clear and

convincing evidence. § 2254(e)(1); Fugate v. Head, 261 F.3d 1206, 1215 and n. 11

(11th Cir. 2001) (citation omitted). If the petitioner failed to develop the factual basis for

a claim in state court, an evidentiary hearing in § 2254 proceedings is limited by §

2254(e)(2). *See also* Cullen v. Pinholster, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557

(2011) (holding that review under § 2254(d)(1), discussed here ahead, "is limited to the

record that was before the state court that adjudicated the claim on the merits," so the

federal court may not rely on new evidence developed in the § 2254 proceedings); *see*

*also* Holland v. Jackson, 542 U.S. 649, 652, 124 S.Ct. 2736, 2738, 159 L.Ed.2d 683

(2004) ("[W]hether a state court's decision was unreasonable must be assessed in light

of the record the court had before it.").

Further, the petitioner must show that the state court's adjudication of the claim:

  (1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States;  or

  (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State
court proceeding.

§ 2254(d).[3]

> Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions.  Under the exhaustion requirement, a habeas petitioner challenging a state conviction must first attempt to present his claim in state court.  28 U.S.C. § 2254(b). If the state court rejects the claim on procedural grounds, the claim is barred in federal court unless one of the exceptions to the doctrine of *Wainwright v. Sykes*, 433 U.S. 72, 82–84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), applies.[[4]]  And if the state court denies the claim on the merits, the claim is barred in federal court unless one of the exceptions to § 2254(d) set out in § § 2254(d)(1) and (2) applies.  Section 2254(d) thus complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding, *see id.*, at 90, 97 S.Ct. 2497.

Harrington v. Richter, 562 U.S. __, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011).  If the

state court issues an opinion, it need not cite or even be aware of controlling Supreme

Court cases under § 2254(d).  *Id.*, 131 S.Ct. at 784 (citation omitted).  Further,

> [w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.  This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a "claim" not a component of one, has been adjudicated.

*Id.*

For an ineffectiveness of counsel claim, the "clearly established" standard is set

forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Under Strickland, "[a] convicted defendant making a claim of ineffective assistance of

---

[3] In Cullen, the Court did not address whether a district court could choose to hold a hearing under § 2254(e)(2) to determine whether § 2254(d)(2) was satisfied.  131 S.Ct. at 1401, n. 8 and 1411, n. 20.

[4] To excuse a procedural default, as noted in Wainwright and the cases cited *supra*, a petitioner must demonstrate either cause and prejudice or actual, factual innocence.

counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In determining whether counsel gave adequate assistance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  Petitioner has a heavy burden, as he must show that "no competent counsel would have taken the action that his counsel did take."  Fugate, 261 F.3d at 1217 (citation omitted).  There are no rigid requirements or absolute duty to investigate a particular line of defense, and "more is not always better."  Id. (citations omitted).

Even if Petitioner can show deficient performance, he must also show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694, 104 S.Ct. at 2068.  It must be "reasonably likely" the result would have been different; "[t]he likelihood of a different result must be substantial, not just conceivable."  Harrington, 131 S.Ct. at 793 (citations omitted).

While Strickland explained the performance and prejudice prongs of analysis, the court need not address them in that order or even address both, as failure to demonstrate either step of Strickland is dispositive of the claim against the petitioner. 466 U.S. at 697, 104 S.Ct. at 2069.

The Strickland standard itself is hard to satisfy, but:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both "highly deferential," and

when the two apply in tandem, review is "doubly" so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  *The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Harrington, 131 S.Ct. at 788 (citations omitted, emphasis added).

## Claims of the Amended Petition

The amended petition presents claims for ineffective assistance of appellate counsel (grounds one through five), and ineffective assistance of trial counsel (grounds six though twenty-one).  Respondents do not dispute that each ground concerning the ineffectiveness of trial counsel was exhausted either on direct appeal (Ex. J) before the Florida First District Court of Appeal (hereinafter DCA), or in the Rule 3.850 motion (Ex. M) which Petitioner also appealed to the First DCA, or in the state habeas petition (Exhibits S, U, V, and W).  Doc. 19, pp. 6-32.  Respondents contend that the claims against appellate counsel lack merit.  Doc. 19, pp. 32-39.  Petitioner contends "an evidentiary hearing is warranted on all claims and the state court adjudication of these claims without an evidentiary hearing represents an unreasonable determination of fact and was contrary to or an unreasonable application of Strickland v. Washington."  Doc. 26, p. 1.  Each ground will be addressed separately.

**Legal Analysis**

Respondent addresses the claims of ineffectiveness of trial counsel first, leaving the claims of ineffectiveness of appellate counsel (grounds one through five) for last. This is a logical way to proceed, since alleged trial error comes first, and it is also the order presented in the Rule 3.850 motion as to trial counsel ineffectiveness claims, and will guide my report and recommendation.

**Ground Six**

Petitioner contends that his trial attorney was ineffective for "failing to object to improper prosecutorial argument that the defendant is a drug dealer/user and therefore the 'kind of person' that commits these kinds of crimes." Doc. 8, p. 7.[5] Petitioner states that in closing argument, "the prosecutor repeatedly argued to the jury" that Petitioner "was the 'kind of person' that would molest children." *Id.*, at 17. Petitioner asserts that the prosecutor's comments invited the jury to convict based on "bad character" and deprived him of a fair trial. *Id.*

Respondent addresses the merits of this claim, pointing out that the post-conviction court found "nothing objectionable about" the prosecutor's argument. Doc. 19, pp. 10-11. The court pointed out that the prosecutor's comment was directed to "the flawed logic of the defense, which was that Defendant did not have the intent necessary to commit the assault" and that he did not molest the victim, but "accidentally touched

---

[5] The page number cited in this report and recommendation is to the page number on CM/ECF, not the number typed on the page by Petitioner. The ECF page numbers are generally one greater than Petitioner's page numbers, resulting from insertion of page 3A by Petitioner in the amended petition. Doc. 8.

the victim while giving her a driving lesson."  *Id.*, at 11.  The First DCA affirmed without written decision.  *Id.*, at 11.

The purpose of closing argument under Florida law is to review the evidence with the jury and to argue inferences that may be drawn from the evidence:

> The proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence.  Conversely, it must not be used to inflame the minds and passions of the jurors so that their verdict reflects an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law.

Bertolotti v. State, 476 So. 2d 130, 134 (Fla. 1985); Dessaure v. State, 891 So. 2d 455, 468 (Fla. 2004).  "Merely arguing a conclusion that can be drawn from the evidence is permissible fair comment."  Mann v. State, 603 So. 2d 1141, 1143 (Fla. 1992).

It is well-established that argument may be made as to questions of credibility from the trial evidence, including credibility as revealed by the demeanor of a witness.  Watkins v. Sims, 81 Fla. 730, 741, 88 So. 764, 767 (Fla. 1921).  *See, e.g.,* Lowe v. State, 2 So. 3d 21, 43 (Fla. 2008) (arguing that a witness was "doing the best he can to recollect the truth" after summarizing his testimony was to explain that the witness did not precisely remember everything and was not improper argument); Williamson v. State, 994 So. 2d 1000, 1013 (Fla. 2008) (arguments pointing to evidence tending to show that the witness was credible, in rebuttal to defense argument that the witness was not credible, were proper).  It is also well-established that the prosecutor may argue that a witness "lied" if that characterization is based upon trial evidence.  State v. Comesana, 904 So. 2d 462, 463-464 (Fla. 3d DCA 2005).

> Both the prosecutor and defense counsel are granted wide latitude in closing argument.  *See Ford v. State*, 802 So. 2d 1121, 1129 (Fla.2001).

No area is more deserving of "wide latitude" than the defendant's ability in a criminal case to argue the "credibility and biases of the witnesses who testified at trial." *Goodrich v. State*, 854 So. 2d 663, 665 (Fla. 3d DCA 2003).

Williams v. State, 912 So. 2d 66, 68 (Fla. 4th DCA 2005).

In closing, Petitioner's attorney argued that Petitioner was driving a stick shift truck and could have accidentally touched the victim.  Ex. E, p. 61.  He argued that the victim and other witnesses had lied, and that "this thing would have happened totally in an innocent manner.  Totally."  *Id.*, p. 62.  He argued that the sexual assault did not happen.  *Id.*, p. 63.  With regard to the aggravated assault charge with a box cutter, counsel argued that the "question is the intent and how it was used and what occurred."  *Id.*, p. 62.  He argued that when Petitioner held the box cutter to the throat of the victim, he was just kidding and joking around.  *Id.*, p. 63.

In response, the prosecutor said in closing argument:

The defense is conceding that holding this up to a 14 year old child's throat as [sic] a joke and wants you to acquit this man of doing that because he says it was foolish. It was just a joke.  Isn't that funny, to take a 14 year old child out in the woods in the dark and hold a knife up to her throat. What kind of person thinks that's funny? What kind of person smokes something white out of a can in the truck when their 14 year old niece is present? The kind of person that would have absolutely no problem molesting a child maybe.

Ex. E, p. 65.  After discussing the fact that the witnesses who testified did not have a motive to lie or make up a story, the prosecutor said:

Shift the focus of this case back onto Kenneth Lamberton.  When you go back into that jury room to deliberate, talk about his actions.  Talk about his motivations.  Talk about what he said when he touched A.B.  I have been waiting for this moment a long time.  Talk about what he said when he touched S.H.  My wife won't give me any so I am going to get it anywhere I can.  Think about the kind of person you are dealing with, that buys drugs, smokes stuff in front of a child, taking a child out in the woods with no permission from her mother.

What do we know about him?  That's what we know about him.  And this
defendant wants you to discard the testimony of these victims because they are
not clear on whether or not they got a driving lesson.  That's the best they can
come up with.  Shift the focus back on the defendant.  Assess his behavior in this
case.  And when you do that, you will return a verdict of guilty as charged on both
counts.  Thank you.

Ex. E, pp. 68-70.

The Rule 3.850 court denied this claim, reasoning that Petitioner's attorney had

simply "asked the jury to assess the reasonableness of Defendant's claims as they

related to the evidence."  Ex. M, R. 28.  The court also determined that the comment

was not a "feature" of the trial.  *Id.*, R. 29.

While the phrase "kind of person" drifted toward the impermissible, in context, it

did not cross the line.  All of the argument related to evidence.  Petitioner's defense as

to sexual touching was that the witnesses lied, told inconsistent stories, and that any

touching was accidental, and as to the aggravated assault, that he held the knife to the

victim's throat as a joke.  In this context, the prosecutor was asking the jury to assesses

the reasonableness of Petitioner's claims of innocence by directing the jury to consider

Petitioner's comments to his victims, and behavior (drug use before the assault,

probable continued drug use after a drug purchase, and angry threats with a box cutter)

as shown through the testimony presented.  It was not improper in doing so and it was

not deficient for Petitioner's trial counsel to have failed to object to these comments.

Petitioner has not shown that the trial court's ruling as to this claim was an

unreasonable application of Strickland.

**Ground Seven**

Petitioner contends that his trial attorney was ineffective by "failing to properly object to the erroneous admission of prior [consistent] statements of the alleged victim through a much more credible witness, the child protection team investigator Dawn Butler." Doc. 8, pp. 7-8. Petitioner argues that the state court misinterpreted his argument, stating the "state court unreasonably ignored the prior consistent statements at which [Petitioner] specifically directed his challenge." *Id.* He states that his challenge was to the "objectionable prior consistent statements" that "came from the child protection investigator Dawn Dennis Butler."[6] *Id.*, p. 17. Petitioner contends his attorney failed to object to questioning of Dawn Butler, which adduced "in meticulous detail" the prior consistent statements of the victim. *Id.*, p. 18. He claims the investigator was "a far more articulate witness than the alleged victim" and that the "testimony more than improperly bolstered the alleged victim's testimony" and the testimony "invaded the credibility-finding province of the jury." *Id.*

The Rule 3.850 court thought that the claim here blamed counsel for not objecting when the prosecutor *asked the victim on redirect* whether she told the same story to her mother as she told to the police, in her deposition, and at trial. Ex. M, R. 29. That was not the claim. Petitioner had claimed ineffectiveness for failing to object testimony from child protection team investigator about prior statements made by the

---

[6] In reply, Petitioner said that his "claim that his trial counsel failed to object to Dawn Dennis Butler's rebuttal testimony concerning the complainant's prior consistent statements resulting in an extreme degree of improper bolstering, was fairly presented to the state court, but was ignored. Doc. 26, p. 9. Petitioner said he raised "this claim in his 3.850, but the state court refused to adress [sic] it, even after [Petition] pointed out on appeal that the claim had not been adressed [sic]." *Id.*

victim.  Ex. M, R. 3.  He then pointed out that in closing, the prosecutor referred to prior

consistent statements by the victim in her written statement to the police, in an

"interview" (presumably with Dawn Butler), and testimony in court, and argued that all of

this "improperly bolstered the alleged victim's testimony with hearsay."  *Id.*, R. 4.

Still, the trial court's ruling, that "the State was entitled to rehabilitate the witness

after her credibility was deflated during cross-examination," Ex. M, R. 29, is correct.

The statements of S. H. to the child protection team, as heard by the Investigator, were

admissible and were not hearsay because S. H. testified at trial, was subject to cross

examination, and the statements were consistent with her testimony and "offered to

rebut an express or implied charge against [her] of improper influence, motive, or recent

fabrication . . . ."  Anderson v. State, 574 So. 2d 87, 92–93 (Fla. 1991) (quoting FLA.

STAT. § 90.801(2)(b)); Rodriguez v. State, 57 So. 3d 961, 963 (Fla. 4th DCA 2011)

(citing Anderson).   Petitioner's attorney had no hearsay objection to make, and under

Florida law, it was proper to try to rehabilitate S. H. with consistent statements made to

the child protection team the day after the offense was committed.[7]  Petitioner has not

shown that the state court's decision was an unreasonable application of Strickland

**Ground Eight**

Petitioner contends that his trial attorney rendered "ineffective assistance by

failing to properly object to the erroneous admission of prior consistant [sic] statements

---

[7] While not argued by Petitioner, the testimony as to the statements that S. H.
made to the child protection team, while arguably "testimonial," were not a violation of
the Confrontation Clause of the Sixth Amendment as interpreted by Crawford v.
Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), since S. H. testified.
United States v. Garcia, 447 F.3d 1327, 1335 (11th Cir. 2006).

of the *Williams* rule witness."  Doc. 8, p. 8.  Petitioner argues that the state court incorrectly found that the witness was not asked about the content of prior consistent statements.  *Id.*, p. 19.  Petitioner argues that A. B. was asked about the content of prior statements because she was asked whether she had told others about "what happened," and that this phrase was a short-hand narration consistent with her trial testimony.  *Id.*

The trial court found that after A. B. had testified as to what Petitioner had done to her, she was asked "whether she told anyone what happened after Defendant molested her."  Ex. M, R. 29.  The court reasoned that this did not elicit a prior consistent statement because the content of her prior statements was not placed into evidence.  *Id.*

At trial, A. B. had described the way in which Petitioner had sexually molested her.  Ex. D, pp. 110-112.  She then was asked whether Petitioner had instructed her as to what to say "about what happened," and she said that Petitioner had told her "not to tell, because he was sorry that he did it, and he knew that it was the wrong thing to do."  *Id.*, p. 113.  It was in this context that she next was asked, "But you did tell someone what happened; right?"  *Id.*  She said yes, her mother and the police.  *Id.*, p. 114.  In context, the phrase "what happened" was neutral, and did not imply that her description of "what happened" to others was necessarily consistent with her trial testimony.  The jury would not have been able to conclude from this that A. B.'s prior descriptions of "what happened" were consistent or inconsistent with her trial testimony.  Hence, Petitioner has not shown that the trial court's application of <u>Strickland</u> to this claim was unreasonable.

**Ground Nine**

Petitioner contends that his trial attorney was "ineffective by using and by failing to object to the prosecutor's use of the word 'charged' when questioning the alleged victim about the prior alleged assault on the *Williams* rule witness, which cloaked the *Williams* rule witness's testimony with the credibility of the sheriff's department and the state attorney's office."  Doc. 8, p. 8.

The Rule 3.850 court ruled that this claim was "conclusively refuted by the record."  The court found:

> Counsel did object and moved to strike the word "charged" (Attachment B, Vol. I at 70-71).  A sidebar was held, and the jury was given a cautionary instruction not to speculate on the legal status of any case involving the witness.  Id. at 71-73.  The objection was timely made and the instruction adequately addressed any possible prejudiced.

Ex. M, R. 30.  The court further held that Petitioner had in fact been "charged" in case number 2004-3801, and determined that, "The statement that he had been charged was not improper bolstering of the testimony."  *Id.*

The transcript reveals that while questioning the victim, S. H., the prosecutor asked her, "Now, at the time that you went with him in the truck, were you aware that he was currently charged with molesting another little girl?"  Ex. D, pp. 65-66.  She answered "yes," and more testimony was elicited.  *Id.*, p. 66.  On cross examination, Petitioner's counsel questioned the victim and the following dialogue took place:

Q:    All right.  And you and her [A. B.] discussed that before the incident that took place in this case; isn't that true?

A:    No.

Q:    You didn't talk to her before this incident in April?

A:      We did, but that was rare.

Q:      I know it might have been rare, but your incident that you are describing
        here and what you said happened in the truck took place on April the 7th,
        2005; right?

A:      Yes.

Q:      Okay. Not what happened with A— happened before that in October of
        2004; correct?

A:      Yes.

Q:      Okay.  And so on several occasions you would talk to A— about what
        happened to her with – allegedly what happened to her; right?

A:      Yes.

A:      And I think Ms. Cappleman used the word "charged".  He hasn't been
        convicted of that.  He has just been charged.

        Ms. Cappleman (prosecutor):        Objection.

        Mr. Remland (defense counsel):  I would say, Your Honor, she has
        opened the door when she used the word "charged" and I would object to
        that and ask the Court to strike the word "charge".  That's . . . .

        Ms. Cappleman:  She doesn't know the answer to the question, is the
        point.  She doesn't know what convicted – whether he has been convicted
        or not.

        Mr. Remland:   At this time, let me just stop and ask the Court to instruct
        the jury to disregard –

        The Court:   Well, let me have the jury step out while we debate this.

Ex. D, pp. 69-70.  During the recess, defense counsel moved for a mistrial "in light of

the word – because the way this has been portrayed, it's not just a prior similar act." *Id*.,

at 71.  Counsel argued that the use of "charged" had "cloaked the act" (the testimony)

with credibility.  *Id.*  The trial court agreed with the State that the word "charged" simply

meant "that other allegations were made against him" and there was no reason for a

mistrial.  *Id.*  The jury was brought back in and the court gave the following curative instruction:

> The Court:    Okay.  Please have a seat.  I have a special instruction to the jury.
> You are instructed to disregard the reference to charges and you
> must not speculate about any legal status regarding the A—
> allegations.  Do you understand that instruction?  Everybody is
> nodding yes.

Ex. D, p. 73.

While defense counsel did not object initially to the prosecutor's use of the word "charged" when questioning the victim, counsel did do so during cross.  The problem was squarely addressed with the curative instruction based upon the objection of Petitioner's attorney.  Petitioner has not come forward with any argument that his attorney might have made that would have changed the outcome.  Petitioner has not shown that the trial court unreasonably applied <u>Strickland</u>.

**Ground Ten**

Petitioner contends that his trial attorney was ineffective "by failing to object to the violation of the court's pretrial *in limine* ruling precluding the alleged victim from opining what was the substance Petitioner Lambert allegedly smoked."  Doc. 8, p. 9. Petitioner argues that this ruling was violated when the prosecutor asked S. H. whether she saw Petitioner use drugs or alcohol, and that he used drugs.  *Id.*, p. 20.

In the trial, the prosecutor asked whether the victim saw Petitioner "use any drugs or alcohol during this episode."  Ex. D, p. 53.  She answered, "yes" and said it was drugs.  *Id.*  She was asked to explain, and she said:

> He had pulled a can out from underneath the seat that had, in the – like the top
> was cut off of it and the – and then there was an opening at one end.  And he

had lit a lighter and stuck it in there.  And I heard crackling and he was breathing the smoke through the open end of the can.

*Id.*, p. 54.  The victim was asked if she could "see the substance that was on the can" and she said, "yes."  *Id.*  When asked to describe it, she said: "It was like a white powder and it smelt really weird."  *Id.*

The trial court denied this claim, reasoning:

The Court was very clear in ruling on the motion: The victim could not testify as to whether the substance was crack cocaine, but she could testify as to what she observed (Attachment B, Vol. I at 8-10).  During the trial, the victim testified that she Defendant use drugs, specifically, that he smoked a white powdery substance from a soda can.  Id. at 53-54.  At no time did she speculate was to what the substance was or whether or not it was illegal.  As an adolescent girl, it was certainly within her personal knowledge as a layperson that Defendant was using some sort of drug.  She testified only as to what she saw.  An objection would have been overruled, and counsel is not ineffective for failing to make it.  As stated in Ground 1, there is no possibility that the information about the use of drugs caused the jurors to convict on the crimes charged.

Ex. M, R. 30-31.

Petitioner has not shown that this 14 year old girl did not have enough common knowledge of drug use to express a lay opinion that Petitioner was ingesting a drug.  Indeed, every member of the jury could draw that conclusion from the description provided by S. H.  Tobacco, the only commonly smoked substance that is not commonly called a "drug," is not a white powdery substance and it is not smoke from a soda can.  Petitioner has not shown that the trial court unreasonably applied <u>Strickland</u>.

**Ground Eleven**

Petitioner contends his trial attorney was ineffective "by failing to impeach the *Williams* rule witness with the deposition whether video or the transcript . . ."  Doc. 8, p. 9.  Petitioner argues that "[e]ither the video, or a transcript thereof, would have

impeached the witness's trial testimony." *Id.*, p. 21.  Petitioner contends his counsel

failed in not "bringing to light the fact that" the *Williams* rule witness "made statements

that indicated that she and the alleged victim had in fact discussed with each other their

allegations against [Petitioner], contrary to their trial testimony." *Id.*, p. 20.

      The Rule 3.850 court rejected this claim, reasoning that Petitioner had not shown

why the video deposition, as opposed to a transcript, was needed.  Ex. M, R. 31.  This

ruling was directly responsive to the way Petitioner worded his Rule 3.850 claim.  He

only mentioned a video deposition.  Ex. M, R. 10.  The court also found the claim

waived because Petitioner was asked at trial whether he had any complaints about his

attorney's performance, and he said no, thus waiving this claim.  *Id.*, R. 31.

      Respondent also argues that there "was no deposition testimony that would

impeach the *Williams* rule witness's testimony" because the deposition "did not contain

any questions or answers regarding whether or not the two children spoke to one

another."  Doc. 19, p. 18, *citing* Exhibits AA, BB.

      In reply, Petitioner apparently concedes that there were no deposition questions

concerning whether the victim and the *Williams* rule witness discussing these events,

and contends that counsel failed to use the deposition to impeach.  Doc. 26, p. 25.

Petitioner said that "the *Williams* rule witness was deposed as petitioner had private

counsel (Dennis Boothe) who done that deposition and at that time there was no way to

know that any such questions would need to be asked." *Id.*

      In summary, Petitioner points to no language from either deposition transcript

that was contradictory to the trial testimony of either witness.  Neither A. B. nor S. H.

testified in their depositions that they had discussed the evidence of the two assaults

with each other.  Exs. AA (A. B.) and BB (S. H.).   Petitioner has not shown that the trial

court unreasonably applied Strickland.

**Ground Twelve**

Petitioner contends his trial attorney was ineffective "by failing to require that the

trial court determine if the alleged similar crime [against A. B.] had been proven by the

required 'clear and convincing' standard."  Doc. 8, pp. 9-10.  Petitioner argues that

during the pre-trial hearing to determine admissibility of the *Williams* rule testimony, his

attorney "was oblivious to the necessary 'clear and convincing' foundational requirement

for admissibility."  *Id.*, p. 21.  He contends his attorney "did not in any fashion challenge

whether there was 'clear and convincing' evidence that [Petitioner] actually committed a

crime [against A.B.], a prerequisite evidentiary finding for the introduction of *Williams*

rule evidence."  *Id.*

Respondent argues that even if he could establish deficiency on this claim, he

cannot establish prejudice because "Petitioner ultimately pled no contest to the

collateral offense in 2004-CF-3801."  Doc. 19, p. 19.  Respondent further points out that

the state court ruled on the merits of this claim and found defense counsel raised all of

the issues at the hearing that Petitioner raised in his motion.  *Id.; see* Ex. M, pp. 75-77.

Petitioner presented the same claim in his Rule 3.850 motion, and also argued

that he himself should have been called as a witness to refute the allegations of A.B.

Ex. M, R. 11.  The trial court denied the claim, reasoning that it was "extremely risky" for

a defendant to testify in a pre-trial hearing, that his denial of wrong-doing would have

had no effect upon the ruling, and that Petitioner was not entitled to a "full trial on all of

the facts alleged by the Williams Rule witness."  *Id.*, R. 31.  The court also reasoned

that the propensity of A. B. for truthfulness would not have been admissible since A.B. did not testify.  *Id.*, R. 32.

The trial court issued a lengthy order finding that the *Williams* rule evidence was admissible.  Ex. M, R. 75-77.  Citing FLA. STAT. § 90.404(2)(b), the court determined that in a criminal case where the defendant is charged with a crime involving child molestation, "evidence of the defendant's commission of other crimes, wrongs, or acts of child molestation is admissible, and may be considered for its bearing on any matter to which it is deemed relevant."  Ex. M, p. 75.  The trial court found the "wrongs" to which the *Williams* rule witness would testify were "acts of child molestation by defendant" and explained in great detail the similarity between the assault upon the victim and the assault on A. B.  *Id.*, p. 76.

Petitioner's counsel argued in the motion *in limine* that the States's evidence concerning "the collateral event is also weak and unsubstantiated."  Ex. B, p. 25. Defense counsel argued that Petitioner "vigorously denies any inappropriate contact ever occurred" with the *Williams* rule witness and claimed that the victim in this case had previously made false accusations of sexual crimes in the past.  *Id.*, p. 25.  Counsel argued that "without a factual basis on which the court may comfortably rely upon, the collateral incident of October 10, 2004, must be excluded in the present case."  *Id.*, p. 26.

McLean v. State, 934 So. 2d 1248, 1262 (Fla. 2006), held that, "Of course, before even considering whether to allow evidence of prior acts to be presented to the jury, the trial court must find that the prior acts were proved by clear and convincing evidence."  This standard, however, is not as rigorous as it sounds.  It is met if the

collateral crimes were sufficiently similar to the offense at issue at trial and it has been

sufficiently established that the accused committed the substantially similar crimes.

Durousseau v. State, 55 So. 3d 543 (Fla. 2010), *cert. denied*, --- S.Ct. ---- (U.S. Fla. Oct

03, 2011) (No. 10-10518).  In that case, the court noted that:

> each victim [of the similar crimes] was a young, black woman of similar
> stature, who either had young children, was pregnant, or both.  Each
> victim was found partially nude from the waist down in or near her
> bedroom with a home-use cord wrapped around her neck.  The cause of
> death in each homicide was asphyxiation. Durousseau's DNA was found
> inside of, or near, each victim's person, although his fingerprints were not
> found at any of the crime scenes.  Each victim lived along the St. Johns
> River and their apartments were within a five-mile radius of each other.

55 So. 3d at 552-553.  The court said that "the collateral crime evidence did exhibit

unique similarities that established a modus operandi sufficient for proving identity." *Id.*,

at 552.  The court also concluded that the collateral crime evidence established that the

defendant "committed substantially similar crimes on two other occasions." *Id.*, at 551.

Justices Pariente and Quince dissented, finding that though "substantial

similarity" was a necessary factor, the trial court also had to separately determine

whether the defendant in fact committed the collateral crimes, a determination that had

to be based upon credible evidence, that the witnesses must distinctly recall the facts

without confusion, and "the evidence must be of such weight that it produces in the

mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the

allegations to be established."  55 So. 3d at 565.  Cited for this were several lower

appellate court cases.

This court must be guided by the majority opinion, however.  The similarities

between the crime charged in the case at bar and the evidence of the offense

committed against A. B. were striking.  A. B. and S. H. were the same age, knew

Petitioner in almost exactly the same way, and the commission of the offenses against

both were *very* similar, inappropriate touching after having been driven to a wooded

area in Petitioner's truck.  There was no DNA evidence in this case, of course, to tie

Petitioner to these offenses, but, on the other hand, the victim in the collateral crime in

this case was not dead and she testified that it was Petitioner who assaulted her.  Her

testimony that Petitioner was the perpetrator was at least as "clear and convincing" as

the DNA evidence in <u>Durousseau</u>, which might have been consistent with consensual

sexual intercourse with the defendant followed by a murder of the victim by another

person.  In either case, "clear and convincing" evidence that the defendant on trial

actually committed the similar crime or crimes does not mean unassailable.

The trial court's ruling, that even had Petitioner testified, his general denials

would have had no effect on the ruling, has not been shown to be incorrect, and it is

plainly true that it is risky for a defendant to testify under any circumstances.  It has not

gone unnoticed that S. H. testified in her deposition that while Petitioner was molesting

her, he said he had done this with her cousin, "P," with "C," with "J," and with "M."  Ex.

BB, p. 23.  While it is unknown if these were underage girls, who knows what kinds of

adverse evidence might have been established had Petitioner testified at the hearing on

the motion in limine.  Petitioner has not shown that the trial court unreasonably applied

<u>Strickland</u> to this claim.

### Ground Thirteen

Petitioner contends his trial attorney "rendered ineffective assistance by

constructively denying petitioner Lamberton any participation in the jury selection

process by retaining the only juror which petitioner Lamberton informed counsel that petitioner Lamberton wanted to have striken [sic]."  Doc. 8, p. 10.  The juror, a Ms. Renna, allegedly was a spiritual counselor for sexual abuse victims, had friends who had been sexually abused, and her home had been burglarized six times.  *Id.*, p. 21. Petitioner asserts that his attorney lodged a challenge for cause, which was overruled, and then used a peremptory strike against another prospective juror, but should have exercised the peremptory strike against this juror.  *Id.*, p. 22.

The state court ruled on the merits of this claim and noted that, although Petitioner failed to name the juror in question, "it is clear that Defendant is referring to prospective Juror Gail Renna."  Ex. M, p. 32.   The court noted that the test for determining juror competency is "whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law give to him by the court."  *Id.*, *quoting* <u>Lusk v. State</u>, 446 So. 2d 1038, 1041 (Fla. 1984).  The court found that the juror "was not a child abuse counselor, she was a teacher and salesperson."  *Id.*  The court noted that although Ms. Renna said that a couple of her friends from church were victims of some sort of sexual crime, and that she and her husband counseled those people, she "indicated that she could listen to the evidence and follow the law," and she said that "she could be fair and leave open the possibility that the girls were not telling the truth, and that she could fairly and objectively assess the case."  *Id.*  The court further noted it denied the challenge for cause and then Petitioner's attorney then used his last peremptory strike on another juror.  *Id.*  Later, counsel asked for another peremptory strike, which was denied.  *Id.* The court then concluded, "Because the record evidences that the juror was not actually

biased, and that any possible bias she had could be set aside, Defendant is unable to prove any prejudice resulting from any alleged failure." *Id.*

Petitioner had to show *actual* juror bias to prove a claim of ineffective assistance of counsel. Goeders v. Hundley, 59 F.3d 73, 75 (8th Cir. 1995). "We give great deference to the determinations of state courts, both trial and appellate, that jurors are not biased." *Id.* Counsel acted partially on Petitioner's request that Ms. Renna not serve on his jury. Counsel lodged a challenge for cause, but was unable to show actual bias. The trial court's finding of no actual bias is entitled to a presumption of correctness, and has not been overcome by the presentation of clear and convincing evidence. § 2254(e)(1). Nor has Petitioner shown that the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2).

Petitioner has not shown that his attorney's decision to use the last peremptory challenge for another prospective juror fell outside the wide range of decisions that a reasonable trial attorney is permitted to make. Indeed, nothing is known as to why the last peremptory was used to dismiss that juror. As explained earlier, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690, 104 S.Ct. at 2066. Petitioner has a heavy burden, as he must show that "no competent counsel would have taken the action that his counsel did take." Fugate, 261 F.3d at 1217 (citation omitted). Petitioner did not do so in his arguments to the Rule 3.850 court. Accordingly, he has not shown that the state court's rejection of this claim was an unreasonable application of Strickland.

**Ground Fourteen**

Petitioner contends his trial attorney was ineffective "by failing to call or question witnesses who would have testified to the alleged victim's reputation for untruthfulness." Doc. 8, p. 10.  Petitioner contends counsel was aware that eight persons "would all have testified that the alleged victim has a reputation in the community for being untruthful."  *Id.*, p. 22.  He further claims that "evidence would have been admissible under Florida Statute 90.609."[8]  *Id.*

Respondent points out that "after the jury retired to deliberate, the trial court engaged in a colloquy with Petitioner" in which he as asked, were there any defense witnesses that he asked his attorney "to investigate which he failed or refused to investigate?"  Petitioner answered No.  Petitioner was also asked if he had any complaints about his attorney's performance, and he answered, "No, I did not.  I thought he did a very good job."  Doc. 19, p. 23.

The state court denied this claim for the reasons set forth in denial of ground six, that Petitioner had waived the claim when he said that he was satisfied with counsel. Ex. M, R. 33.  The court noted that during the colloquy, Petitioner stated "that there were no witnesses that his attorney failed or refused to investigate."  *Id.*  The court also concluded that Petitioner's statement that "the victim 'had a wide reputation in the community as a pathological liar'" was insufficient "to meet the predicate necessary for

---

[8] The statute provides: "A party may attack or support the credibility of a witness, including an accused, by evidence in the form of reputation, except that: (1) The evidence may refer only to character relating to truthfulness.  (2) Evidence of a truthful character is admissible only after the character of the witness for truthfulness has been attacked by reputation evidence."

reputation testimony under section 90.609, Florida Statutes." *Id.* Cited for this ruling was CHARLES W. EHRHARDT, *Florida Evidence* § 405.1 (1995 ed.). *Id.*

Mindful that Petitioner is held to his prior declaration at trial, I read this claim differently than did the state court. Petitioner declared at trial that there were no witnesses that his attorney failed to *investigate*, but he was *not* asked whether there were witnesses whom Petitioner wanted to be *called* to testify who were not called because his attorney failed to do so.

Notwithstanding, the state court 's decision that Petitioner fails to support this claim by laying a proper foundation was not an unreasonable determination of state law, and the state court is the final arbiter as to state law.[9] "Before a reputation witness may testify under section 90.609, 'a foundation must first be laid to establish' that the reputation witness 'is aware of the witness's reputation for truthfulness in the community.' " Lott v. State, 695 So. 2d 1239, 1242 (Fla. 1997), also citing Professor Ehrhardt. "Reputation evidence must be sufficiently broad-based and should not be predicated on 'mere personal opinion, fleeting encounters, or rumor.' " *Id.*, (quoting

---

[9] "It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.' " Herring v. Secretary, Dept. of Corrections, 397 F.3d 1338, 1355 (11th Cir.), *cert. denied*, 546 U.S. 948 (2005), *quoting*, Agan v. Vaughn, 119 F.3d 1538, 1549 (11th Cir.1997) (citations omitted). This court is not "at liberty to challenge this state court determination of state law." Cargill v. Turpin, 120 F.3d 1366, 1381 (11th Cir. 1997), *cert. denied*, 523 U.S. 1080 (1998), citing McBride v. Sharpe, 25 F.3d 962, 972 (11th Cir.) (en banc ), *cert. denied*, 513 U.S. 990 (1994). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." McBride v. Sharpe, 25 F.3d at 972, quoting Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) (citations omitted).

Rogers v. State, 511 So. 2d 526, 530 (Fla. 1987).  Further, the "community from which

the reputation testimony is drawn [must be] sufficiently broad to provide the witness with

adequate knowledge to give a reliable assessment."  Larzelere v. State, 676 So. 2d

394, 399 (Fla. 1996).  One person may not simply offer "his personal view" of another

witness's credibility as that invades the jury's province.  Davis v. State, 937 So. 2d 273,

276 (Fla. 4th DCA, 2006), citing Boatwright v. State, 452 So. 2d 666, 668 (Fla. 4th DCA

1984).  "A person's family is too narrow a segment of the community to be the source of

reputation testimony under section 90.609."  Gonzalez v. State, 871 So. 2d 1010, 1011

(Fla. 4th DCA 2004).

Petitioner generally alleged that the witnesses would have testified that the victim

was a "pathological liar," but he did not allege the specifics for the predicate.  He did not

allege how the witnesses knew the victim, how they knew the reputation of the victim in

the community for truthfulness, or any of the other specifics that would have shown that

the opinion as to reputation was drawn from a sufficiently broad-based community and

was not mere personal opinion, fleeting encounters, rumor, or familial relations.

Consequently, Petitioner has not shown that the state court's rejection of this claim was

an unreasonable application of Strickland.

**Ground Fifteen**

Petitioner contends his trial attorney was ineffective "by failing to request a

pretrial evidentiary hearing to proffer the testimony of Kenneth Currey Pierce in support

of the defense motion in limine to admit evidence of prior false accusations by the

alleged victim."  Doc. 8, p. 11.  Petitioner acknowledges counsel "sought to admit

evidence that the alleged victim falsely accused Kenneth Pierce of sexual misconduct."

*Id.*, p. 22.  He states the witness was willing to testify.  *Id.*

In ruling on Petitioner's Rule 3.850 motion, the state court pointed to the record

which demonstrated the trial court  "granted the State's motion in limine to preclude the

evidence concerning a prior sexual battery claim by the victim."  Ex. M, p. 33. The court

correctly noted that "there is no requirement that every pretrial motion be set for live

testimony."  *Id.*   The court also determined that Petitioner's claim that the court would

have found the other alleged assailant to be credible in his denials was "purely

speculative and cannot form the basis for relief."[10]  *Id.*

When it granted the State's motion in limine, the trial court found that in the prior

"unresolved claim of sexual battery" against the victim by her 13 year old cousin at night

in her home, the attacker denied the attack and the victim has never recanted her

allegations.  Ex. B, p. 51.  The court determined that that the circumstances of this

allegation were "not even remotely similar to this case."  *Id.*  The court noted that in the

prior alleged assault, there were physical signs to corroborate the claim of sexual

battery (unlike the case at bar).  *Id.*  Thus, the court concluded that Petitioner was

---

[10] In Reeves v. State, 862 So. 2d 60, 61 (Fla. 1st DCA, 2003), the court
concluded that under FLA. STAT. § 90.610(1), credibility may generally "not be attacked
by proof that the witness has committed specific acts of misconduct which bear on the
truthfulness of the witness."  An exception *may* apply to the rule, however, if "the victim
previously falsely accused" someone of sexual misconduct.  *See* Cliburn v. State, 710
So. 2d 669 (Fla. 2d DCA 1998) and Jaggers v. State, 536 So. 2d 321 (Fla. 2d DCA
1988).  However, in those cases (Cliburn and Jaggers), "the victims admitted that they
had previously made false statements."  710 So. 2d at 670, 536 So. 2d at 327.  As that
was not the state of affairs in Reeves, the court concluded the exception was not
appropriate.

precluded from presenting "the details of that claim in an attempt to impeach [the victim], by arguing the falsity of this collateral matter." *Id*.

In summary, Petitioner's attorney resisted this motion in limine, without success. Petitioner has not alleged anything that his attorney might have done to alter that result. The trial court granted the motion in limine because the alleged assault was not even remotely similar. Petitioner has not shown that the court would have changed that ruling based upon a credibility determination as to the alleged assailant, and the court plainly said that the credibility of the assailant claim was purely speculative. Accordingly, Petitioner has not shown that the state court's rejection of this claim was an unreasonable application of Strickland.

**Ground Sixteen**

Petitioner contends his trial attorney was ineffective "by failing to object to the improper guidelines scoresheet inclusion of 40 points for sexual contact where defendant was charged an convicted of Attempted lewd or lascivious molestation." Doc. 8, p. 11.

The Rule 3.850 court ruled that even were there error in the sentencing scoresheet, the scoresheet was irrelevant as the court imposed the maximum sentences, to run consecutively, and gave specific reasons for those sentences. Ex. M, R. 34. Thus, even if this were error, prejudice to the outcome could not be shown. Petitioner has not demonstrated that the state court's rejection of this claim was an unreasonable application of Strickland.

**Ground Seventeen**

Petitioner contends his trial attorney was ineffective "by failing to argue that the same rationale employed by the court in granting the state's motion in limine should have been employed with equality to grant the defendant's motion in limine."  Doc. 8, pp. 11-12.  The claim is that it was unfair to allow Williams rule testimony or A. B., finding her to be credible, and then fail to determine whether the 13 year old alleged assailant of S. H. was credible.  *Id.*, p. 23.

This is a rehash of ground fifteen.  The court denied this motion, finding that each motion in limine was "carefully scrutinized by the Court without regard to any other motions."  Ex. M, R. 34.  This was not an unreasonable application of Strickland.  As fully discussed with respect to ground fifteen, the state court granted the State's motion in limine because the allegations of sexual assault against S. H. by her cousin were not sufficiently similar to the allegations against Petitioner.  The court did carefully review each motion separately.  The ruling granting the motion in limine did not turn upon the credibility of the cousin, and the argument that the court would have denied the motion if it had found the 13 year old cousin to be more credible than S. H. was too speculative to find ineffective assistance of counsel.

**Ground Eighteen**

Petitioner contends his trial attorney was ineffective "by failing to object to the prosecutor's reference to the defendant as a sexual predator during the defendant's sentencing."  Doc. 8, p. 12.  Petitioner claims the definition of a "sexual predator" as stated in the Florida statutes could not apply to him and the prosecutor's reference to

him as a predator was inflammatory.  *Id.*, p. 23.  Respondent argues this claim is meritless for the reasons state by the state court.  Doc. 19, p. 27.

The state court noted that the prosecutor did *not* "refer to Defendant as a sexual predator or argue that he qualified as one."  Ex. M p. 35.  Instead, during sentencing, the State "made the following argument in support a severe sentence:  'In this case we have a situation where the defendant is a predator, and he preys on children, and he does it in a sexual manner.  And that type of sentence calls for ten years in the Department of Corrections.' "  *Id.*  The state court ruled that the "trial judge was perfectly capable of distinguishing argument from legal status, and even inquired as to whether the conviction would require sex offender designation."  *Id.*  Furthermore, the state court noted that none of the reasons cited by the trial court to support the sentence rendered "suggested that Defendant qualified as a sexual predator or that the Court was under the impression that he did."  *Id*.

It is plain that the court understood that the prosecutor's comments were argument for a prison sentence, not that Petitioner should have been sentenced as a sexual predator.  The state court's denial of this claim of ineffectiveness has not been shown to have been an unreasonable application of <u>Strickland</u>.

### Ground Nineteen

Petitioner claims counsel was ineffective "by [conceding] to the only disputed factual issue regarding [his] guilt of the charged offense.  Doc. 8, p. 12.  Petitioner alleges that during opening statements, his attorney stated that the evidence would show Petitioner "tried to touch" the victim's breast.  *Id.*, p. 23.  Petitioner argues that this

statement was counter to his defense, that he never "tried" to touch the victim's breast, and that all touching was accidental as she drove.  *Id*.

The trial court denied this claim, finding that no concession occurred.  Ex. M, R. 35.  The court reasoned that while counsel did state that Petitioner "tried" to touch the victim's breast, this did not prove Attempted Lewd and Lascivious Molestation.  *Id*.  The court pointed out that during opening statement, counsel "stressed on multiple occasions that any touching that occurred was accidental, and that Defendant did not have the state of mind necessary to molest the victim."  *Id*.

During opening statement, Petitioner's counsel explained that the event at issue occurred while Petitioner was giving his niece a driving lesson and she was sitting on his lap.  Ex. D, p. 26.  Counsel explained the victim's father had been teaching her to drive and she sat on his lap to do so.  *Id*.  Thus, "sitting on Mr. Lamberton's lap is nothing unusual and she agreed and she sat and she jumped on his lap."  *Id*.  Counsel then argued:

> In the cab that [Petitioner] was driving, the cab was half that size [the size of her father's truck], and she was forced to sit closer because of the situation in the cab.  So she was sitting closer on his lap, getting a driving lesson, thinking nothing of it, because she had been taught the same way by her dad.
>
> Now, that they were driving on was rough terrain.  This was a dirt, shuffled, messed up area, a wooded area, dirt, potholes, you could imagine.  You all had experience dealing with these type of roads.  And those of you who are familiar with driving trucks know that they will bounce and you will bounce around.  And that is exactly what happened.  And you will hear the testimony in this trial about how she was sitting on his lap, and she was bouncing around on his lap, and Mr. Lamberton was not intentionally with lewd and lascivious intent attempting to molest this young lady.

And if his hands touch her leg or his hand brushed up against her blouse or touched her blouse or grabbed her for something and touched her during this jostling and bumping on this road.  If there was physical contact like that and if this physical contact was against her leg or her chest area or her stomach area, not her breasts.  And I believe the evidence will show he was not touching her breast.  It was below her breast, on her stomach and on her leg.

And during this time while she is on his lap and he is trying to teach her, if his hand touched her leg and his hand or his other hand - - and I think the testimony will show maybe she state that his right hand was on her leg, and his left hand might have brushed against her stomach.  So if he is sitting behind her, like this, and I'm holding my arms out, like this, and he is bouncing around, the evidence will show that is not lewd and lascivious assault.

Ex. D, pp. 26-28.  Counsel went on with more details about events later in the night, and

then returned to this driving incident while discussing the victim's credibility:

But what the evidence will show is that she has made statement, Ms. H—, that he was kidding around.  He had this box cutter.  But what else will the evidence show about Ms. H— credibility?

The evidence will show that she has stated that her leg was touched, her leg was touched, and that his hand was in the inner thigh area.  And the evidence will show that he tried to touch her breast, but his hand was on her stomach.  This happened while she was learning to drive.

And then the evidence will show that her mother, . . . went to this courthouse and gave a deposition where her mother said something totally different.

*Id.*, p. , 31-32.

It is apparent from the record in context that what counsel was suggesting is that although the victim will testify that Petitioner tried to touch her breast, his hand was on her stomach.  The statement was preceded by a very clear exposition of the defense that would be presented, that none of the touching was intentional.  The state court's denial of this claim of ineffectiveness has not been shown to have been an unreasonable application of <u>Strickland</u>.

**Ground Twenty**

Petitioner claims trial counsel was ineffective by failing to pursue an alibi defense. Doc. 8, p. 13. Petitioner contends his attorney should have used the GPS monitoring device that Petitioner was wearing at the time to show Petitioner was at a different location. *Id.*, p. 13, 24. Petitioner contends the state court wrongly determined this claim because "it ignored the fact that there is no competent, substantial evidence that the ankle monitor was malfunctioning, as there has been no evidentiary hearing on that issue." *Id.*, p. 24.

The state court noted that the record showed "defense counsel and the State entered into a stipulation that they would not explore the GPS issue, because the ankle monitor was not working properly at the time." Ex. M, p. 36. Moreover, the court concluded any "alibi defense based on the ankle monitor would have been easily debunked via a showing that it was malfunctioning, and would have also opened the door to why Defendant was on an ankle monitor in the first place . . . ." *Id.* The court found his attorney was "not ineffective for failing to engage in this meaningless and dangerous strategy." *Id.*

Petitioner's claim fails for two reasons. It is insufficient as a matter of law because Petitioner makes only a conclusory assertion that the GPS would have shown him to be "somewhere else." Doc. 8, p. 24. There is no showing by Petitioner that the GPS would have placed him in a particular location that would have cast doubt on the victim's testimony which put Petitioner in another location.[11] The record shows the GPS

---

[11] The victim testified that Petitioner drove her "down Silver Lake Road" and through the Apalachicola National Forest. Ex. D, p. 46. Later she said the "ended up

"wasn't functioning properly" and it did show "him somewhere else."  Ex. D, p. 11.  It is

not clear "where" that "somewhere else" location was, but in light of the fact that

Petitioner does not dispute giving the victim driving lessons or being present with her on

that night, this "alibi" would not have made any difference to the outcome of the trial.

Moreover, at trial, while the jury was deliberating, the record reflects the following

discussion took place:

> The Court:     Are there any alibi witness you asked your attorney to investigate
> that he has failed to?  In other words, there was somebody else at
> the scene of the crime and you weren't even there and they could
> put you somewhere else?  And that's assuming a crime occurred.
>
> The Defendant:     No, ma'am.
>
> The Court:     But you understand what an alibi is?  In other words, if you say
> somebody said something that you were - - if they say you were in
> the woods on such and such a date, but you can prove that at such
> and such a time that you were at your mother's house or
> McDonalds or whatever, then your attorney could have investigated
> that and called those witnesses.  Do you understand that?
>
> The Defendant:     Yes, ma'am.
>
> The Court:     Did you ask him to do any of those things?
>
> The Defendant:     No.

Ex. D, pp. 86, 92.

Second, this claim is remarkably frivolous.  Petitioner was wearing a GPS

monitor *because he was on pretrial release charged with fondling a six year old girl in

case number CF 1272.*  Ex. D, p.10.  Petitioner's counsel properly raised an oral motion

---

on the other Silver Lake Road and then drove into town."  *Id.*, p. 56.  After Petitioner
took her to the movies, he picked her up and the drove into another entrance in the
national forest.  *Id.*, p. 60.  That location is not clearly identified.

in limine just before the trial began to keep out reference to Petitioner being on pretrial release and wearing the GPS device because it would be "highly prejudicial."  *Id.*, p. 10-11.  The state court's denial of this claim of ineffectiveness has not been shown to have been an unreasonable application of <u>Strickland</u>.

**Ground Twenty-One**

Petitioner claims trial counsel was ineffective by stating during the opening statements that "we also expect that you will hear from Mr. Lamberton, Kenneth Lamberton, the man who is on trial here today, should he decide to testify."  Doc. 8, p. 13; *see also* Ex. D, p. 35.  Petitioner contends he had "already made it clear that he was not going to testify" in his own defense.  *Id.*  Petitioner asserts this "drew attention to defendant's decision not to take the stand, and in so doing, cast that decision in an unfavorable light . . . ."  *Id.*, p. 24.  Petitioner contends it was prejudicial to suggest it was "expected" that Petitioner would testify.  *Id.*

The state court rejected this claim:

Lastly, Defendant argues his counsel was ineffective for telling the jury during opening statements that Defendant would testify.  He did no such thing.  Counsel only state that, should Defendant decide to testify, the jury would hear from him.

Ex. M, p. 36.  The court correctly concluded there was no likelihood that counsel's comments had any effect on the jury's verdict.  *Id.*

Furthermore, as shown by Respondent, after the State rested, the jury was excused for lunch, and the Court denied counsel's motion for judgment of acquittal, the Court inquired whether the Petitioner would "be choosing to testify?"  Ex. D, pp. 124-16.  His attorney said, "Well, you know, it's lunchtime and – "  *Id.*, p. 126.  The Court then

asked, "He hasn't made up his mind yet?"  And counsel responded, "Yeah. I think he is

thinking it over right now."  *Id.*  The Court then explained to Petitioner that he had the

right "to take the stand and testify if" he choose to do so.  *Id.*  The Court reminded him

that it was absolutely his decision to make, and asked if he understood.  *Id.*, p. 126-127.

Petitioner said, "Yes, ma'am."  *Id.*, p. 127.  Those statements undermine Petitioner's

claim and demonstrate his decision had not been made at the time of opening

statements.  Even so, there was no prejudice to Petitioner due to counsel's statement in

opening, and the Court gave jury instructions which advised the jury to not draw any

negative inference from the fact that Petitioner did not testify.  The state court's denial of

this claim of ineffectiveness has not been shown to have been an unreasonable

application of <u>Strickland</u>.

**Ground One**

In ground one, Petitioner contends that appellate counsel "should have argued

that it violated Fundamental Fairness when the Trial Court (on the one hand) excluded

evidence of prior false accusations proffered by the defense while (on the other hand)

allowed comparable *Williams* Rule Evidence to be used against the defendant to

corroberate [sic] the victim's trial testimony."  Doc. 8, p. 5.  This claim is essentially the

same as ground fifteen, previously alleged against trial counsel, and now brought

against appellate counsel.  For the same reasons claim fifteen was denied, this claim

must also be denied.

Furthermore, Petitioner argues in the Reply, that the case of <u>Gutierrez v. State</u>,

747 So. 2d 429, 433 (Fla. 4th DCA 1999), supports his theory that there is an unfair

imbalance in allowing the State to offer evidence to corroborate the victim's testimony,

but to deny the defendant's evidence which would deflate her credibility.  The Gutierrez

court concluded that "if the state may introduce similar fact evidence of other sexual

assaults to bolster the credibility of the victim, it follows that the defense may offer

similar fact evidence to support its theory of the case and deflate the credibility of the

victim."  747 So. 2d at 433, *citing* Heuring v. State, 513 So. 2d 122, 125 (Fla. 1987),

State v. Rawls, 649 So. 2d 1350, 1352 (Fla. 1994), and Rivera v. State, 561 So. 2d 536

(Fla. 1990).  However, the requirement missing in this case is that Petitioner fails to

demonstrate "that 'additional showing of similarity' to the defense version of the case so

as to render such testimony admissible."   747 So. 2d at 433, *citing to* Saffor v. State,

660 So. 2d 668, 672 (Fla. 1995) (stating "There must be some additional showing of

similarity in order for the collateral sex crime evidence to be admissible."), *superseded*

*by statute*, *See* McLean v. State, 934 So. 2d 1248 (Fla. 2006).  Here, Petitioner fails to

make the showing of similarity necessary for the admissibility of the evidence.  As the

state court found in ruling on the State's motion *in limine* to preclude introducing

evidence of an alleged prior false claim of sexual battery by the victim, these

circumstances were "not even remotely similar to this case."  Ex. B, p. 51.[12]  The state

court's denial of this claim of ineffectiveness of appellate counsel has not been shown to

have been an unreasonable application of Strickland.

---

[12] The other incident was "a prior unresolved claim of sexual battery by a 13 year-old teenage cousin upon SH, at night, when she was in the same home."  Ex. B, p. 51.  Further, the court noted the Sheriff's Office report contained medical records which tended "to corroborate a sexual battery."  *Id.*  Thus, Petitioner has come forward with no evidence of a prior *false* accusation by the victim.

**Ground Two**

Petitioner contends appellate counsel "should have argued that the trial court erred in admitting *Williams* rule evidence without (first) requiring "clear and convincing" evidence and (second) without weighing the unfairly prejudicial effect of simultaneous exclusion of similar defense evidence offered for similar reasons."  Doc. 8, p. 4. Respondent contends that "appellate counsel could not be constitutionally ineffective because neither of these arguments were raised below, were not preserved, and therefore, cannot form the basis for a[n] ineffective appellate counsel claim."  Doc. 19, p. 34.

This claim is similar to ground twelve, which was presented against trial counsel. The record reveals that trial counsel *did* argue in the hearing on the motion that the States's evidence concerning "the collateral event" was "weak and unsubstantiated." Ex. B, p. 25.  The trial court found the *Williams* Rule witness's statements had a "high indicia of reliability and trustworthiness."  Ex. B, p. 54.  Furthermore, the record reveals that the trial court *did* weigh the prejudicial effect of admitting this evidence.  *Id.*  The court ruled, "This *Williams* Rule evidence from A. is not *unfairly* prejudicial."  Ex. B, p. 54.  "A special instruction can be given to clarify its limited admissibility."  *Id.*[13]  The trial court was mindful not to permit the State to "make the *Williams* Rule evidence unfairly 'the feature of the case.' "  *Id.*

---

[13] A special instruction was given to the jury: "The evidence you are about to receive concerning evidence of other acts allegedly committed by the defendant will be considered by you for the limited purpose of proving motive, intent, plan, knowledge, the absence of mistake or accident on the part of the defendant, or to corroborate the testimony of S. H., and you shall consider it only as it may relate to those issues."  Ex. D, p. 105.  Thereafter, defense counsel renewed his objection for the record.  *Id.*

Despite Respondents' contention, it does appear that Petitioner's counsel raised

an objection to the admissibility of the *Williams* Rule witness; indeed, more than once.

Ex. D, pp. 4, 105.  Counsel also renewed an objection to keeping out "the false

accusation testimony as well."  Ex. D, pp. 5-6.  Counsel proffered the testimony of the

potential witness and said the boy "would have said that he never raped" the victim in

this case.  *Id.*, p. 6.  That proffer is inadequate to show a prior false accusation.  The

court rulings were correct, and appellate counsel is not ineffective for failing to raise

claims on appeal that lacked merit.  The state court's denial of this claim of

ineffectiveness of appellate counsel has not been shown to have been an unreasonable

application of <u>Strickland</u>.

**Ground Three**

Petitioner contends appellate counsel "should have argued that the trial court

violated the defendant's right against self incrimination, and violated the Attorney/Client

privelege [sic], when the trial court compelled factually explicit answers from the

defendant during trial – and used the very information improperly elicited to impose an

extremely severe sentence."  Doc. 8, p. 6.  Petitioner contends that at the end of trial,

and while the jury was deliberating, the "court compelled factually explicit answers from

[Petitioner] as to his mental health at the time of the alleged offense . . . ."  *Id.*, p. 16.

Petitioner's attorney objected to the questioning.  *Id.*  Petitioner contends that he was

sentenced to the maximum prison sentences, to be served consecutively, because the

trial court found that Petitioner poses a serious risk to young women.  *Id.*  He argues

that this sentence was improperly based upon information obtained from the unlawful

questioning while awaiting the jury verdict.  *Id*.  He asserts that his appellate counsel

was ineffective for failing to present this claim on appeal.  *Id*.

While the jury was deliberating, the trial court engaged in a "3.850 inquiry" with

the apparent intent to see if there were any latent Rule 3.850 problems that would be

raised later.  Ex. E, p. 86.  The court discussed with Petitioner sentencing possibilities,

plea offers, a possible alibi defense, medication he was taking, that he was competent

and not suffering from mental problems such that he had an insanity defense, and the

like.  Ex. E, pp. 86-100.  At one point, his attorney objected:

| Mr. Remland: | Judge, if I can interject.  I mean, I really understand why you're doing this type of inquiry, and I have been practicing law for 32 years now.  And this is the first time I have sat through an in-depth inquiry at the end of trial, before the verdict was in, delving into my client's problems like this.  And the attorney/client privilege and probably the Fifth Amendment issues of self incrimination.  I think we are going to – I would object to the course of this inquiry. |
|---|---|
| The Court: | No, I am just trying to figure out if he has any issue or concern about that.  You can talk privately with him.  And he can come back and announce to me he has no problem at that defense.  But what I am trying to explore is that he was not aware – if he was not aware of a possible defense – and I don't know if it's a possibility under the facts.  That's something you and he would have to talk about privately.  It's important that he understands the concept, or if he is convicted, I get these letters.  I am the one who gets them, not you. |

Ex. E, p. 100.  After the trial court and defense counsel discussed this further, counsel

again renewed his objection:

| Mr. Remland: | I think this type of inquiry interferes with the attorney/client relationship, and it goes too far.  If you want to ask my client |
|---|---|

whether he was satisfied with my advise [sic], that's one thing, but to get into details –

The Court:        I cannot ask him if he is satisfied with your advise [sic] on that without asking him about insanity defense.

Ex. E, pp. 101-102.

At sentencing, there was testimony concerning a mental health report, that

Petitioner suffered from a mental disorder, and testimony about the effect on Petitioner

after his son died.  Ex. F.  Petitioner also testified to his depression and Petitioner's

counsel argued that the State minimized the effects of the son's death on Petitioner.  *Id.*

The trial court sentenced Petitioner, *id.*, p. 49, and then said:

The Court:        . . . Mr. Lamberton, your attorney has made a passionate and eloquent argument on your behalf and I have listened carefully.  But I am struck by, at trial, with the following three compelling things: A child underage in a position of trust to you, you attempted to take advantage of her physically.  You threatened her physically.  The knife cutter incident, whether feet were kicking or not doesn't really matter.  That fact that that thing was taken out and held to her - - and I don't believe it was a joke.

And the *Williams* rule testimony which indicates that before that, someone else under a ruse and pretext, which shows some planning, you engaged in this behavior, that, to me, signals that you are, for whatever reason – it may have been triggered by the death of your son, which I am sorry for.  It *may* be triggered by *some other mental or complexity* that you have going on or may or may not be involved with some sort of drug use.  *I do not know that, but it really doesn't matter.*

The bottom line is this, that in my view, you pose a serious risk to the safety of minors, young women in this community.  And I cannot risk, by your release, this happening to anybody else or possibly escalating.  The bottom line is the facts in this case, in my view, support that you are a serious threat to the safety of the community.  And certainly punishment is a part of this sentence, but also so is protecting the community.  And the ultimate protection is if you are away in DOC.  And so that is the decision of the Court.

Ex. F, pp. 50-51 (emphasis added).

Petitioner has not pointed to any evidence which reveals that any questioning of at trial had any effect on sentencing.  The trial judge said that she did not know whether Petitioner's offenses were triggered by some mental health problem, but she did not know and it really did not matter.  Thus, she did not base her sentence upon anything she learned about Petitioner's mental health during questioning at trial.  Further, the comments by the trial judge reveal that Petitioner was sentenced based on the circumstances of the crime and the need to safeguard the community.  The state court's denial of this claim of ineffectiveness of appellate counsel has not been shown to have been an unreasonable application of Strickland.

### Ground Four

Petitioner claims appellate counsel was ineffective for failing to file a Rule 3.800(b)(2) "motion asserting that victim injury points were erroneously scored and that the judge would not have imposed the same sentence with an accurately prepared scoresheet."  Doc. 8, p. 6.  Petitioner argued that no "sexual contact occurred in this case, but 40 points were assessed against [Petitioner] for sexual contact."  Id., p. 16.

This claim is without merit for the reasons discussed with respect to ground sixteen.  The state court's denial of this claim of ineffectiveness of appellate counsel has not been shown to have been an unreasonable application of Strickland.

### Ground Five

Petitioner's final claim is that appellate counsel was ineffective because counsel "should have argued that the trial court reversably [sic] erred by denying the defense motion to excuse for cause juror [sic] Gail Renna, and by denying the defense an extra

peremptory strike, and should have moved to supplement the record on appeal with the transcripts of jury voir dire."  Doc. 8, p. 7.

This claim is without merit for the reasons discussed with respect to ground thirteen.  The state court's denial of this claim of ineffectiveness of appellate counsel has not been shown to have been an unreasonable application of Strickland.

**Certificate of Appealability**

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2254 Rule 11(b).

I find no substantial showing of the denial of a constitutional right.  § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, I recommend that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

**Conclusion**

Accordingly,  it is **RECOMMENDED** that petition for writ of habeas corpus filed by

Kenneth Lamberton pursuant to 28 U.S.C. § 2254, challenging  his conviction for

attempted lewd or lascivious molestation and aggravated assault with a deadly weapon,

in the Circuit Court of the Second Judicial Circuit, in and for Leon County,

Florida, case number 2005-CF-1273, be **DENIED WITH PREJUDICE** and that a

certificate of appealability be **DENIED** pursuant to § 2254 Rule 11(a).

**IN CHAMBERS** at Tallahassee, Florida, on November 30, 2011.


**s/     William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**



**<u>NOTICE TO THE PARTIES</u>**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**